**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| GOKHAN POLAT,<br><br>    *Petitioner*,<br><br>    v.<br><br>SOTO, et al.,<br><br>    *Respondents*. | Civil Action No. 2:25-cv-16893<br><br>**OPINION**<br><br>December 17, 2025 |

**SEMPER**, District Judge.

    **THIS MATTER** comes before the Court upon the Petition of Gokhan Polat ("Petitioner") for a Writ of Habeas Corpus under 28 U.S.C. § 2241, together with a Motion for Temporary Restraining Order. (ECF No. 1.) Petitioner challenges the legality of his detention by U.S. Immigration and Customs Enforcement ("ICE"), asserting that he is entitled to an individualized bond hearing under 8 U.S.C. § 1226(a) or immediate release. (ECF No. 1.) Respondents oppose the Petition, asserting that Petitioner is mandatorily detained under 8 U.S.C. § 1225(b)(2)(A) in accordance with the Board of Immigration Appeals' decision in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). (ECF No. 7.) The Court has considered the parties' submissions and the record before it. For the reasons set forth below, the Petition is GRANTED.

    **I.**    **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

    Petitioner is a twenty-two-year-old native and citizen of Turkey who is currently detained by ICE at Florence Correctional Center in Arizona. (ECF Nos. 1, 11.) As reflected in the verified petition, Petitioner entered the United States without inspection in May 2022 after crossing the

southern border, and although an expedited removal order was issued at that time, Petitioner did not sign it, and thus, argues it was never served. (ECF No. 1 ¶¶ 1-5, Ex. G.) He was subsequently paroled into the country under INA § 212(d)(5)(A) and thereafter settled in Brooklyn, New York with his U.S.-citizen spouse. (*Id.* ¶¶ 3-6.) In September 2025, Petitioner and his spouse filed an I-130 immediate-relative petition and a concurrent I-485 application for adjustment of status. (*Id.* ¶ 3.) Prior to that, Petitioner had filed an asylum application in June 2023, which USCIS dismissed on October 20, 2025 based on the earlier unserved removal order. (*Id.* ¶ 7.)

October 20, 2025, Petitioner appeared for a Credible Fear Interview at the USCIS Asylum Office in Bethpage, New York. (*Id.* ¶ 28.) He was found to possess a credible fear of persecution from Turkey, but was nevertheless taken into DHS custody immediately following the interview and transported to Delaney Hall in Newark, New Jersey. (*Id.* ¶¶ 1-2.) The Petition alleges that, as a noncitizen apprehended in the interior who has resided in the United States for more than three years, has no criminal history, and has complied with all immigration requirements, Petitioner's custody is governed by 8 U.S.C. § 1226(a) and entitles him to a bond hearing. (*Id.* ¶ 9.) ICE has instead deemed him mandatorily detained under § 1225(b)(2)(A) pursuant to the Board of Immigration Appeals' recent decision in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), a position Petitioner challenges as inconsistent with the Immigration and Nationality Act, the Administrative Procedure Act, and the Due Process Clause. (*Id.* ¶¶ 59-77.)

Petitioner commenced this action on October 24, 2025 by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, together with supporting exhibits. (ECF No. 1.) He also filed a motion for an order to show cause. (ECF No. 2.) The Court issued an Order to Show Cause directing Respondents to explain by October 31, 2025 why habeas relief should not be granted and

permitting Petitioner to reply within three days of any response. (ECF No. 4.) Petitioner filed proof of service on October 27, 2025. (ECF No. 5.)

Respondents filed their response to the petition on October 31, 2025, along with exhibits including two Form I-213 records and a Notice to Appear dated October 20, 2025. (ECF No. 7.) That same day, Petitioner filed a motion for a temporary restraining order seeking to prevent his removal during the pendency of this matter. (ECF No. 6.) The Clerk noticed the TRO motion for a December 1, 2025 return date. On November 3, 2025, the Court granted the motion, prohibiting Petitioner's removal from the State of New Jersey while this case remains pending. (ECF No. 8.) Petitioner filed his reply on the same date. (ECF No. 9.) On November 4, 2025, the United States Attorney's Office submitted a letter advising the Court of Petitioner's facility of confinement, explaining that Petitioner was transferred to Pine Prairie ICE Processing Center in Louisiana prior to the Court's November third (3rd) Order. (ECF No. 10 at 1.)

On November 18, 2025, Petitioner submitted a letter advising the Court that, despite the Court's November third (3rd) Order, Petitioner was removed from the Pine Prairie ICE Processing Center and is now detained at the Central Arizona Florence Correctional Facility. (ECF No. 12.) The matter is now fully submitted.

## II.   LEGAL STANDARD

### A.   Habeas Jurisdiction

Under 28 U.S.C. § 2241, federal district courts retain jurisdiction to review the legality of executive detention, including immigration custody. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Demore v. Kim*, 538 U.S. 510, 517 (2003). A district court may grant habeas relief if the petitioner "is in custody in violation of the laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Jurisdiction lies in the district of initial custody and is unaffected by subsequent transfers. *Anariba*

*v. Dir. Hudson Cnty. Corr. Ctr.*, 17 F.4th 434, 445–446 (3d Cir. 2021); *Rumsfeld v. Padilla*, 542 U.S. 426, 441 (2004).

### B. Statutory Detention Authority

The Immigration and Nationality Act provides two principal sources of prefinal removal order detention authority. First, § 1225(b) mandates detention of certain "applicants for admission" – persons seeking entry who have not been formally admitted. Such individuals are subject to mandatory detention during inspection and removal processing. Second, § 1226(a) authorizes—but does not require—detention of noncitizens already "present in the United States," subject to discretionary bond proceedings.

The distinction between § 1225(b) and § 1226(a) is critical. Under § 1225(b), detention is mandatory and typically brief. Under § 1226(a), detention is discretionary and constitutionally constrained by due process. Detention under § 1226(a) attaches where DHS encounters a noncitizen within the interior after admission or after a substantial period of continuous presence, whereas § 1225(b) applies only where the individual is encountered "seeking admission" at the border or its functional equivalents. *Jennings v. Rodriguez*, 583 U.S. 281, 297–298 (2018); *Zumba v. Bondi*, No. 25-CV-14626 (KSH), 2025 WL 2753496 (D.N.J. Sept. 26, 2025) (distinguishing detention of "arriving aliens" under § 1225(b) from detention of persons apprehended in the interior whose presence in the United States was a settled and ongoing fact).

### C. Equitable and Interim Relief

Federal courts may issue interim injunctive relief to preserve jurisdiction and prevent irreparable harm while a habeas petition is under consideration. *See Nken v. Holder,* 556 U.S. 418, 432-436 (2009) (explaining that courts possess traditional equitable power to stay removal while a petition for review remains pending). This authority arises from the Court's inherent equitable

power—codified in part by the All Writs Act, 28 U.S.C. § 1651(a)—to issue temporary relief necessary to protect its jurisdiction. Such relief is warranted where removal would render the petition moot or cause substantial prejudice to the petitioner's ability to vindicate her statutory rights. *See Leiva-Perez v. Holder*, 640 F.3d 962, 969-970 (9th Cir. 2011) (identifying irreparable harm where removal impairs ability to obtain meaningful judicial review).

### III. ANALYSIS

This case presents a narrow but consequential question: whether Petitioner's present detention is authorized by § 1225(b)(1), as Respondents assert (ECF No. 7 at 7), or instead falls under § 1226(a), which would entitle him to an individualized bond hearing. The answer turns on two issues: (1) whether Petitioner is properly classified as an "applicant for admission" on the basis of an expedited removal order issued in May 2022 (ECF No. 1 ¶¶ 1-5, Ex. G); and (2) whether his subsequent apprehension in October 2025, more than three years after entry and long after DHS paroled him into the interior (ECF No. 1 ¶¶ 1-6) triggers the statutory regime governing interior enforcement rather than border processing. The record establishes that Respondents cannot sustain their burden on either point.

#### A. The 2022 Expedited Removal Order

Respondents rely on an expedited removal order issued in May 2022 when Petitioner crossed the southern border. (ECF No. 7 at 2—4; Ex. A.) Yet the government's own conduct undermines its basis for Petitioner's detention. DHS paroled Petitioner into the interior under § 212(d)(5)(A), permitted him to reside in New York, accepted a properly filed asylum application, and allowed him to submit a concurrent I-130/I-485 package. (ECF No. 1 ¶¶ 3-7.) Each action is inconsistent with the maintenance of a live, unexecuted expedited removal order. *See Zumba v. Bondi*, No. 25-CV-14626 (KSH), 2025 WL 2753496, at *9 (D.N.J. Sept. 26, 2025) (examining the

real-world immigration posture of the noncitizen when assessing statutory authority). DHS cannot now retroactively resurrect that order to justify detention under § 1225(b) absent evidence that the order ever took legal effect. (ECF No. 7.)

Accordingly, the Court finds that Respondents have not carried their burden to show that the 2022 order provides a lawful basis for treating Petitioner as an applicant for admission.

### B. Petitioner's Apprehension in the Interior

Petitioner's present detention must be justified under the statute governing his October 2025 apprehension. The undisputed facts demonstrate that, at the time ICE arrested him, Petitioner had resided in the United States for more than three years, lived with his U.S. citizen spouse, pursued lawful status through multiple applications, and had been permitted by DHS to remain in the interior under parole. (ECF No. 1 ¶¶ 1-7.) He was apprehended not at a port of entry or at the border, but at the USCIS Asylum Office in Bethpage, New York, where he appeared for a scheduled interview. (*Id.* ¶ 28.)

The Third Circuit has instructed that detention authority turns on the noncitizen's statutory posture at the time of arrest. *See Zumba,* 2025 WL 2753496, at *4 (distinguishing between detention authority for arriving aliens versus individuals apprehended in the interior whose presence was settled and ongoing). Section 1225(b) applies only to individuals undergoing inspection or seeking admission at the border or its functional equivalents. *See Jennings,* 583 U.S. at 297-298. By contrast, § 1226(a) governs detention of individuals already in the United States – particularly those with substantial ties, or pending applications. *Id.*

The question is not whether DHS can identify a historical event at the border, but whether the individual was, at the moment of arrest, meaningfully "seeking admission" within the purview of § 1225(b). Here, Petitioner was plainly not. Rather, he fits squarely within § 1226(a). Petitioner

was not encountered as a recent entrant, nor was he in the process of admission. (ECF No. 1 ¶¶ 1-7.) He was living in the interior, pursuing affirmative relief, subject to ongoing USCIS adjudications, and fully integrated into the domestic enforcement system. (*Id.*) Nothing in § 1225(b) or its interpretive case law permits DHS to treat such a person as an arriving alien engaged in inspection. *See Jennings,* 583 U.S. at 297-298; *Bethancourt Soto v. Soto*, No. 25-CV-16200, 2025 WL 2976572, at *5–6 (D.N.J. Oct. 22, 2025).

The government relies heavily on *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), but that decision cannot overcome the statutory text or the framework articulated by the Supreme Court and the Third Circuit. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400–01, 144 S.Ct. 2244, 219 L.Ed.2d 832 (2024) (while "agencies have no special competence in resolving statutory ambiguities," "[c]ourts do"). Notably, *Yajure Hurtado* concerns individuals whose arrival status was already established under a valid expedited removal order. Where the existence, service, and legal effect of the underlying order are disputed—and wholly unsupported by the record—*Yajure Hurtado* provides no basis for recategorizing an interior arrest as a border encounter. Moreover, the Board cannot expand § 1225(b) beyond the limits of the statute or the Supreme Court's construction in *Jennings*.

For these reasons, Petitioner's custody is not authorized by § 1225(b), serves no legitimate purpose, and warrants habeas relief. *See Zumba, 2025 WL 2753496.*

**C. The Court Orders Petitioner's Release**

Petitioner has now been detained for several weeks under 8 U.S.C. § 1225(b), even though the administrative record contains no properly served or legally operative expedited removal order capable of triggering that statute. (ECF No. 1 ¶¶ 1-5, Ex. G.) His lack of criminal history, his continuous residence, and his compliance with immigration requirements underscore the necessity

of individualized assessment. (ECF No. 1 ¶ 9.) The government's position—which would render Petitioner mandatorily detained indefinitely on the basis of a 2022 expedited removal order—has resulted in Petitioner's relocation across the country and ultimately to a detention facility in Arizona, against court Order, where his counsel cannot reliably access him. (ECF No. 11.) This conduct has effectively insulated Petitioner from the statutory process Congress prescribed under § 1226(a), while prolonging a detention that the Government cannot ground in any valid statutory authority.

Habeas relief cannot fully remedy the indignities associated with DHS's unexplained interstate transfer or the opacity surrounding Petitioner's current location. *See Muhammad v. Close*, 540 U.S. 749, 750 (2004). But the writ's flexibility allows the Court to restore Petitioner to the position he would have occupied had DHS adhered to law. In light of Respondents' failure to demonstrate a lawful basis for detention under § 1225(b), and consistent with the Court's authority to "dispose of the matter as law and justice require," 28 U.S.C. § 2243, immediate release is the appropriate remedy.

### IV.   CONCLUSION

For the reasons set forth above, Petitioner's mandatory detention under § 1225(b) violates the INA and the Due Process Clause of the Fifth Amendment. The Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (ECF No. 1) is GRANTED. Respondents are ordered to release petitioner from detention within 24 hours, and facilitate his return to the District of New Jersey. Following his release, respondents are permanently enjoined from rearresting or otherwise detaining petitioner under § 1225(b) and may not arrest or otherwise detain petitioner under § 1226(a) for 14 days.

An appropriate order accompanies this opinion.

*/s/ Jamel K. Semper*
**Hon. Jamel K. Semper**
**United States District Judge**